UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 13-cv-7570 (RJS)

———————————

FIRST HILL PARTNERS, LLC,

Plaintiff,

VERSUS

BLUECREST CAPITAL MANAGEMENT LIMITED, *et al.*,

Defendants.

———————————

OPINION AND ORDER
September 30, 2014

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff First Hill Partners, LLC ("First Hill") brings this diversity action against BlueCrest Capital Management Limited, BlueCrest Capital International Master Fund Limited, and BlueCrest Capital Management (New York) L.P. (collectively, "BlueCrest" or "Defendants"), asserting fraud, fraudulent inducement, conversion, unjust enrichment, and tortious interference with contract in connection with an asset sale between third parties Skinit, Inc. ("Skinit") and Proveho Capital, LLC ("Proveho"). Now before the Court is Defendants' motion to dismiss this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted in part and denied in part.

I. BACKGROUND

A. Facts

Skinit is a California-based customization company that developed a tool to help consumers personalize – or "skin" – their mobile devices with images, text, and symbols. (Compl. ¶¶ 2, 28.)[1] In

---

[1] The facts are drawn from the Complaint (Doc. No. 1 ("Compl.")), and are assumed to be true for the purpose of this motion. In deciding the instant motion, the Court has also considered BlueCrest's memorandum of law (Doc. No. 23 ("Mem."), First Hill's opposition (Doc. No. 25 ("Opp.")), and Blue Crest's Reply (Doc. No. 27), as well as the declarations and exhibits submitted in support of the parties' memoranda (Doc Nos. 24, 26).

April 2011, Skinit entered into a Loan and Security Agreement (the "LSA") with BlueCrest, a London-based hedge fund. (*See id.* ¶ 29.) BlueCrest lent Skinit $10 million – to be repaid in 48 monthly installments – in exchange for a senior security interest in Skinit's assets and two observer seats on Skinit's Board of Directors. (*See id.*)

First Hill alleges that in early 2013, Skinit defaulted on its obligations to BlueCrest by failing to pay back the loan. (*See id.* ¶ 7.) On February 27, 2013, Skinit and BlueCrest amended the LSA to restructure Skinit's payment obligations. (*See id.* ¶ 31.) As a secured lender, BlueCrest retained its right to foreclose on collateral from the loan (*i.e.*, Skinit's assets) and conduct a foreclosure sale. (*See id.* ¶ 7.) First Hill further alleges that in February 2013, Skinit began to explore the possibility of selling its assets. (*See id.* ¶ 32.) On March 14, 2013, Skinit executed an agreement (the "Skinit Engagement Agreement") engaging First Hill as exclusive advisor to Skinit regarding the sale of its assets. (*See id.* ¶ 37.) Pursuant to the Skinit Engagement Agreement, First Hill would, among other things, locate parties interested in acquiring Skinit's assets, assist Skinit in evaluating potential acquirers, and represent Skinit during negotiations with the objective of "maximiz[ing] the value of Skinit's asset sale." (*Id.* ¶ 40.) In return, First Hill would receive a $5,000 monthly cash retainer, a cash success fee upon the successful completion of a sale, and reimbursement of all out-of-pocket expenses. (*See id.* ¶ 41.) Although First Hill alleges that BlueCrest "knew of and consented to" the Skinit Engagement Agreement, BlueCrest was not a party to the contract. (*Id.* ¶ 37.)

First Hill alleges that in April 2013, about one month into the Skinit Engagement Agreement, one of Skinit's investors discontinued funding the corporation. (*See id.* ¶ 44.) This adversely affected Skinit's financial position and transformed the potential asset sale into a "fire sale" in which "the timeline for the sale became highly accelerated, the list of potential counterparties shifted and, with diminished sell-side leverage . . . negotiations with potential counterparties became far more difficult." (*Id.*) Rather than seeking out a distressed sale specialist, "Skinit and BlueCrest ultimately decided to continue working only with First Hill . . . ." (*Id.* ¶ 46.) After several months of research, meetings, advising sessions, and due diligence, First Hill identified Proveho as a potential acquirer, and then facilitated information exchanges and negotiations between Proveho and Skinit, making sure that BlueCrest was fully informed of the deal's progress and actively involved in the negotiations. (*See id.* ¶¶ 52–58.)

First Hill alleges that on or around June 22, 2013, during a meeting devoted to reviewing the status of the offers from potential buyers, Skinit and BlueCrest concluded that Proveho's bid was the "optimal choice." (*Id.* ¶ 72.) Thereafter, Proveho submitted a final proposal of acquisition via a "Letter of Intent," which Skinit signed, with BlueCrest's approval, on June 28, 2013. (*See id.* ¶¶ 76–78.) However, on or around July 22, 2013, Proveho became unresponsive to First Hill's communications (*see id.* ¶ 84), and on August 1, 2013, Proveho told First Hill that it would negotiate directly with BlueCrest, cutting First Hill out of the negotiations entirely (*see id.* ¶ 87).

On August 5, 2013, BlueCrest, as senior secured creditor, foreclosed on Skinit's assets. BlueCrest then sold the collateral in a private foreclosure sale *to Proveho* under Article 9-610(a) of the UCC. (*See id.* ¶ 90.)

2

The terms of the foreclosure sale were "virtually identical" to the terms of the deal orchestrated by First Hill. (*See id*. ¶ 91.) As a result of the foreclosure sale, First Hill did not receive the cash success fee it would have received had Skinit sold its assets directly to Proveho. (*See id*. ¶ 92.)

### B. Procedural History

On October 25, 2013, First Hill filed the Complaint in this action bringing claims for fraud, fraudulent inducement, unjust enrichment, tortious interference with contract, and conversion.[2] First Hill seeks to recover the fair market value of the services it provided to BlueCrest during the period of negotiations with Proveho, as well as the cash success fee, the retainer fee, expenses, attorneys' fees, and punitive damages. (*See* Compl. ¶¶ 113, 121–22, 136.) On January 8, 2014, the Court held a pre-motion conference to discuss BlueCrest's contemplated motion to dismiss. On February 21, 2014, BlueCrest moved to dismiss the Complaint in its entirety for failure to state claims on its various causes of action. (Doc. No. 22.) The motion was fully briefed on April 4, 2014.

### II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

### A. Choice of Law

Before addressing the merits of First Hill's claims, the Court must first resolve what law is applicable to each claim. The parties exclusively referenced New York law in their pre-motion letters (*see* Doc. Nos. 12, 15) and during the discussion at the pre-motion conference (*see generally* Transcript of Jan. 8, 2014 Pre-Motion Conf., Doc. No. 31 ("Pre-Motion Conf. Tr.")). While BlueCrest still argues that the Court should apply New York law (*see* Mem. at 20), First Hill now contends that California law should govern (*see* Opp. at 6–9).[3]

---

[2] The Court notes that First Hill's first cause of action is labeled "Fraud/Fraudulent Inducement." (Compl. at 31.)

[3] First Hill argues – somewhat half-heartedly – that if California law does not apply, then Colorado law should. (*See* Opp. at 7–8 ("Here, California is the state with the greatest interest in this litigation. . . . If any state other than California has a substantial interest in this action it is Colorado . . . .").) As will be discussed below, the Court ultimately agrees with

A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits. *See Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). In New York, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). An "actual conflict" exists where "the applicable law from each jurisdiction provides different substantive rules" and those differences are "relevant to the issue at hand[] and . . . have a significant *possible* effect on the outcome of the trial." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331–32 (2d Cir. 2005) (emphasis in original) (citations and internal quotation marks omitted). Where there is no actual conflict, a choice-of-law analysis is unnecessary and New York law will apply. *See Curley*, 153 F.3d at 12.

However, if the court finds an actual conflict in the applicable law of each jurisdiction, the court embarks on a choice-of-law analysis. New York maintains two choice-of-law tests – one for contract claims and one for tort claims. *See GlobalNet Finanical.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). The claims alleged here sound both in contract (unjust enrichment) and tort (fraud, tortious interference with contract, conversion).

1. Fraud/Fraudulent Inducement Claim

First Hill's opposition brief asserts that "material differences exist between the substantive laws of California, Colorado, and New York" (Opp. at 7), but First Hill fails to explain these differences with respect to its "fraud/fraudulent inducement" claim. First Hill's brief analyzes this claim under California law. However, as best the Court can tell, First Hill also implies that it would prevail under either the law of New York or California. (*See id.* at 17 n.6 (asserting that the existence of a fiduciary relationship is a question of fact under both California and New York law).)

In any event, the Court finds that there is no actual conflict of law with respect to First Hill's first cause of action. Both New York and California require similar elements for a common law fraud claim. *Compare Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."), *with Avedisian v. Mercedes-Benz USA, LLC*, No. 12-cv-00936 (DMG), 2013 WL 2285237, *8 (C.D. Cal. May 22, 2013) ("The elements of fraud in California are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (citation and internal quotation marks omitted)). The Court reaches the same conclusion with respect to fraudulent inducement. *Compare Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986) ("In order to prove fraudulent inducement under New York law, a plaintiff must prove (1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did

---

First Hill's primary argument, and thus does not address the alternative one.

4

so rely, (7) in ignorance of its falsity (8) to his injury." (footnote, citation, and internal quotation marks omitted)), *and Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud [under New York law]." (citation and internal quotation marks omitted)), *with ADP Commercial Leasing, Inc. v. M.G. Santos, Inc.*, No. 13-cv-0587 (LJO), 2013 WL 5424955, *7 (E.D. Cal. Sept. 27, 2013) ("Fraud in the inducement is a subset of the tort of fraud. It occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." (citation and internal quotation marks omitted)). Thus, because there is no actual conflict between New York and California law, New York law will apply. *See Curley*, 153 F.3d at 12.

### 2. Conversion

As with its fraud/fraudulent inducement claim, First Hill seemingly asserts that it would prevail under both New York and California law with respect to its conversion claim. (*See* Opp. at 22 n. 11 ("New York law, too, permits a cause of action for conversion of identifiable funds to which First Hill had a superior right of possession to that of BlueCrest.").) To the extent that First Hill is arguing that the law in both jurisdictions is the same, the Court agrees. *Compare Martinez v. Capital One, N.A.*, 863 F. Supp. 2d 256, 266 (S.D.N.Y. 2012) ("Under New York law, to establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." (citation and internal quotation marks omitted)), *with In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) ("[Under California law,] [t]he elements of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages."). Thus, New York law will apply. *See Curley*, 153 F.3d at 12.

### 3. Unjust Enrichment

The Court next turns to First Hill's unjust enrichment claim. Here, again, there is no actual conflict between the law governing unjust enrichment claims in New York and in California. *Compare Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001) ("Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."), *with CSI Elec. Contractors v. Zimmer America Corp.*, No. 12-cv-10876 (CAS), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013) ("[T]o obtain restitution based on this theory, a plaintiff must allege that (1) the defendant was enriched by a benefit, and (2) it was unjust for the defendant to retain the benefit.").[4] Under

---

[4] The Court notes that there is disagreement among California and federal courts regarding whether unjust enrichment may be pleaded as a stand-alone cause of action under California law rather than as a theory permitting recovery under another cause of action. *Compare Johns v. Bayer Corp.*, No. 09-cv-1935 (JMA), 2010 WL 476688, at *6 (S.D. Cal. Feb. 9, 2010) (dismissing unjust enrichment claim because "it is not an independent cause of action"), *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) (treating unjust enrichment claim as a claim for restitution and determining if

5

both New York and California law, an unjust enrichment claim is precluded if a valid contract covers the subject matter of the dispute. *Compare Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 521 N.Y.S.2d 653 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."), *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). Thus, because there is no actual conflict between New York and California law, New York law will apply. *See Curley*, 153 F.3d at 12.

4. Tortious Interference with Contract

Finally, the Court turns to First Hill's tortious interference with contract claim.[5]

With regard to this claim, there is an actual conflict between New York law and California law. In California, but not New York, a plaintiff can state this cause of action in the absence of an actual breach of contract. *Compare Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) ("Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) "damages resulting therefrom." (citation and internal quotation marks omitted)), *with Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) ("[Under California law, t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach *or disruption* of the contractual relationship; and (5) resulting damage." (emphasis added)). Accordingly, the Court

---

plaintiff pled the elements of restitution). The Court is persuaded that the disagreement is "largely semantic" and that a claim for unjust enrichment is cognizable as a claim for restitution. *McNeary-Calloway v. JP Morgan Chase Bank N.A.*, 863 F. Supp. 2d 928, 963–64 (N.D. Cal. 2012). Accordingly, the Court compares the elements of a claim for restitution under California law and the elements for a claim of unjust enrichment under New York law.

[5] "[A claim] for tortious interference with *business relations* . . . is a different cause of action consisting of different elements than [a] tortious interference with *contract* [claim]." *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 220 (S.D.N.Y. 2013); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) ("The [additional] wrongful means requirement [for tortious interference with business relations] makes alleging and proving a tortious interference claim with business relations more demanding than proving a tortious interference with contract claim." (citation and internal quotation marks omitted)). California recognizes a similar tort. *See Buxton v. Eagle Test Sys., Inc.*, 08-cv-04404 (RMW), 2010 WL 1240749, *1 (N.D. Cal. Mar. 26,

2010) ("To state a claim for intentional interference with prospective economic advantage, one must plead facts showing: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (citation and internal quotation marks omitted). Because First Hill labels this cause of action "Tortious Interference with Existing Contracts" (Compl. at 35), the Court must assume that First Hill is bringing a tortious interference with contract claim, as opposed to a tortious interference with business relations or prospective economic advantage claim.

now turns to the applicable choice of law test to determine which jurisdiction's law should apply.

Where a claim sounds in tort, like the tortious interference with contract claim here, New York courts apply the "interest analysis" test. *GlobalNet*, 449 F.3d at 384. Pursuant to the interest analysis test, "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Id.* (citation and internal quotation marks omitted). "[T]he only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *GlobalNet*, 449 F.3d at 384 (alterations, citation, and internal quotation marks omitted omitted). For the interest-analysis test, "torts are divided into two types, those involving the appropriate standards of conduct . . . and those that relate to allocating losses that result from admittedly tortious conduct . . . ." *Id.* (citation and internal quotation marks omitted). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) (citation and internal quotation marks omitted). Conversely, "[i]f the conflict involves loss-allocation rules, the site of the tort is less important, and the parties' domiciles are more important." *Id.* (citation and internal quotation marks omitted).

Because tortious interference with contract is a conduct-regulating cause of action, *see White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284–85 (2d Cir. 2006), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders," *In re Thelen LLP*, 736 F.3d at 220.

Here, the Court concludes that California has a greater interest in regulating this conduct than New York. First, Skinit was headquartered in California. (*See* Declaration of Jeffrey H. Sussman, dated March 21, 2014, Doc. No. 26 ("Sussman Decl.") ¶ 3.) Likewise, Skinit's assets were located in California when BlueCrest foreclosed upon and sold them to Proveho. (*Id.*) During the relevant time period, most of the meetings regarding negotiations and due diligence site visits took place at Skinit's headquarters in California. (*Id.*) In addition, the contract that was allegedly interfered with – the Skinit Engagement Agreement – was governed by California law. Although BlueCrest argues that New York law should apply, New York is only connected to the case because BlueCrest maintains an office there. (Compl. ¶ 20.) Having considered the interest analysis test, the Court is persuaded that California has the greatest interest in regulating the conduct in question, tortious interference with a contract that was governed by California law and substantially performed in California. Accordingly, the Court will apply California law to this cause of action.

### B. Merits Analysis[6]

#### 1. Fraud/Fraudulent Inducement

First Hill's fraud claims are premised on BlueCrest's $10 million loan to Skinit, and BlueCrest's undisputed right to foreclose on that loan in the event of Skinit's default. Notwithstanding the fact that BlueCrest

---

[6] First Hill has withdrawn Count Five of its Complaint, which alleged misappropriation of its trade secrets. (Opp. at 25 n.14) ("[First Hill] nevertheless agrees that [its] trade secrets claim is properly dismissed because the identity of prospective purchasers and the terms upon which they might acquire Skinit's assets are not a 'trade secret.'"). Accordingly, the Court only considers First Hill's first four causes of action.

7

never signed a forbearance agreement, First Hill argues that BlueCrest's foreclosure – the exercise of its undisputed right – was somehow fraudulent.

Although the rules of federal pleading usually require only "a short and plain statement" of the plaintiff's claim for relief, *see* Fed. R. Civ. P. 8, averments of fraud must be "state[d] with particularity," Fed. R. Civ. P. 9(b). *See ATSI Commc'ns*, 493 F.3d at 99 ("[F]raud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss."). In order to satisfy Rule 9(b), the plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal citation omitted). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns*, 493 F.3d at 99.

a. Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). If a plaintiff is proceeding under a material omission theory, it must further allege that the "defendant had a duty to disclose material information." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (citations omitted). A duty to disclose arises in the following scenarios

[1] the parties are in a fiduciary relationship; [2] under the special facts doctrine, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or [3] where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure.

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (citations and internal quotation marks omitted); *see also Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386 (App. Div. 2003) ("New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair.").

To the extent First Hill is proceeding under a material misrepresentation theory, First Hill's pleadings are wholly conclusory and do not pass muster under Rule 9(b). Although First Hill maintains that BlueCrest "made affirmative misrepresentations" indicating that they would "fully cooperate" with and "support" Plaintiff's pursuit of a buyer for Skinit (Compl. ¶ 95), First Hill does not actually cite to any *statements* made by Defendants. Instead, First Hill relies on a series of "specific actions" that BlueCrest allegedly took to "convey[] to First Hill its assent in pursuing a non-foreclosure asset sale, while simultaneously steering First Hill towards structuring a deal that BlueCrest secretly intended to take over just before the finish line." (Opp. at 10.) For example, First Hill alleges that "BlueCrest *actively encouraged* First Hill's efforts to secure a purchaser that would maximize Skinit's value for all interested

8

parties by, among other ways, participating in the potential buyer selection process, offering feedback and suggestions concerning negotiating strategies with specific potential counterparties, and referring other potential purchasers to First Hill . . . ." (*Id.* ¶ 54.) First Hill treats these "actions" as tantamount to misstatements. They are not. If mere "actions" were sufficient to satisfy the "material misstatement" element, there would be no such thing as an "omission." Accordingly, First Hill has failed to adequately plead a claim for fraud by misstatement.

First Hill's fraud by omission theory hinges on whether BlueCrest had a duty to disclose material information to First Hill.[7] As noted above, the law recognizes three instances in which a duty to disclose arises, and First Hill has established none of them. *See Aetna Cas. & Sur. Co.*, 404 F.3d at 582.

First, First Hill fails to sufficiently allege that First Hill and BlueCrest were in a fiduciary relationship. *See Aetna Cas. & Sur. Co.*, 404 F.3d at 582. "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005) (citation and internal quotation marks omitted). A fiduciary relationship "is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *Id*. First Hill urges the Court not to dismiss its fraud claim at this juncture because determination of a fiduciary duty is a fact-specific inquiry. (*See* Opp. at 17 n.6.) To this end, First Hill asserts that BlueCrest "had its own preexisting relationship of trust" with First Hill, by nature of the fact that (1) First Hill, over a period of two months, "interacted regularly" with BlueCrest's observers on Skinit's Board; (2) the companies "worked together directly in the past," in which First Hill "proposed potential transactions . . . and, in at least two transactions, First Hill represented BlueCrest portfolio companies;" and (3) "[o]ver the years, First Hill's principals developed longstanding relationships of trust and confidence with multiple partners at BlueCrest, including the specific individuals representing BlueCrest as relevant to these claims." (Compl. ¶ 34.) These barebones and conclusory allegations are clearly insufficient to establish a fiduciary duty with respect to this separate and distinct interaction.

Second, First Hill fails to sufficiently allege that BlueCrest's duty to disclose arises "under the special facts doctrine, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *See Aetna Cas. & Sur. Co.*, 404 F.3d at 582. Pursuant to the special facts doctrine, "a party may have a duty to disclose information particularly within its knowledge, [if (1) the] material fact was information peculiarly within the knowledge of the defendant, and (2) . . . the information was not such that could have been discovered by plaintiff through the exercise of ordinary intelligence." *Kriegel v. Donelli*, No. 11-cv-9160 (ER), 2014 WL 2936000, *13 n.14 (S.D.N.Y. June 30, 2014). First Hill does not allege that

---

[7] At the pre-motion conference, Plaintiff acknowledged that it was proceeding under an omission theory of fraud. (*See* Pre-Motion Conf. Tr. at 4:25–5:4 ("As your Honor pointed out, this is not a fraud by affirmative representation, although possibly something within discovery will reveal an affirmative misrepresentation. But it was really more by omission, and by actions the active encouragement, the direction . . . .").)

9

BlueCrest possessed any such special facts, other than to suggest that BlueCrest knew of its intention to foreclose on Skinit and deal directly with Proveho. But knowledge of intention is not knowledge of *facts*, and certainly not the kind of facts required under the special facts doctrine. *Cf. SSA Holdings LLC v. Kaplan*, -- N.Y.S.2d --, 2014 WL 4693760, *1 (App. Div. Sept. 23, 2014) (holding that a duty to disclose did not arise under the special facts doctrine where "[w]hile there may have been concealment of opinions, there was no concealment of the facts upon which those opinions were based and defendants were not bound to volunteer their opinions" (citation and internal quotation marks omitted)).

Finally, First Hill fails to sufficiently allege that BlueCrest "made a partial or ambiguous statement, whose full meaning [would] only be made clear after complete disclosure." *Aetna Cas. & Sur. Co.*, 404 F.3d at 582. As discussed above, First Hill does not sufficiently allege that BlueCrest made *any* statements, much less partial or ambiguous ones. Consequently, this avenue is also foreclosed.

Having failed to plead the existence of a duty to disclose on the part of BlueCrest, First Hill's fraud by omission claim must likewise be dismissed.

      b. Fraudulent Inducement

The Court next turns to First Hill's fraudulent inducement theory. As referenced earlier, "[p]roving fraudulent inducement under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Netto v. Rastegar*, No. 12-cv-4580 (CM), 2012 WL 4336167, *4 (S.D.N.Y. Sept. 20, 2012). To state a claim for fraudulent inducement that is distinct from the already discussed theories of fraud, First Hill must allege that BlueCrest fraudulently induced First Hill into entering the Skinit Engagement Agreement in the first place. *See Wall*, 471 F.3d at 416 ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud [under New York law]." (citation and internal quotation marks omitted)).

To this end, the Complaint states, in a conclusory manner, that "[o]n or before [the time First Hill entered the Skinit Engagement Agreement], BlueCrest did not manifest to First Hill any intention to enforce its rights as a secured creditor against Skinit for any existing defaults, including the right to foreclose. Instead, BlueCrest actively encouraged and supported First Hill's retention and its subsequent efforts to secure a purchaser that would maximize Skinit's value for all interested parties." (Compl. ¶ 39.) Once again, First Hill fails to allege any misstatements by BlueCrest or any reason why BlueCrest would have a duty to disclose its foreclosure plans to First Hill. Accordingly, First Hill's fraudulent inducement claim, like its fraud claim, fails to meet the particularity requirements of Rule 9(b) and must be dismissed.

      2. Conversion

To state a claim for conversion, a plaintiff must show that (1) it has "legal ownership or an immediate superior right of possession to a specific identifiable thing," and (2) the defendant "exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Martinez*, 863 F. Supp. 2d at 266.

First Hill alleges that it has "possessory rights" in the success fees, the retainer fees, and the expense reimbursements that First Hill "was to earn under the Skinit Engagement Agreement." (Compl. ¶¶ 126–27.) However, the law is clear that "[a]n action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession. An action of conversion does not lie to enforce a mere obligation to pay money." *Erhlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994). First Hill has failed to allege the existence of tangible funds of which it was the owner because First Hill's finder's fee was never triggered, as Skinit was ultimately sold pursuant to a foreclosure sale. Accordingly, First Hill cannot state a conversion claim.

### 3. Unjust Enrichment

The New York Court of Appeals recently reiterated that "the theory of unjust enrichment . . . contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (citations and internal quotation marks omitted). To state a claim for unjust enrichment, Plaintiff must show that (1) "[BlueCrest] was enriched at [First Hill's] expense," and that (2) "equity and good conscience require" recovery. *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009). While there is no privity requirement to state an unjust enrichment claim, "a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). The connection between the parties is "too attenuated" where the parties "simply had no dealings with each other," *Georgia Malone*, 19 N.Y.3d at 517–18, or if there is no "relationship between the parties that could have caused reliance or inducement," *Wildenstein*, 16 N.Y.3d at 182.

In *Bradkin v. Leverton*, the Court of Appeals determined that, while there had been no direct dealings between the parties, their relationship was sufficiently close to allege an unjust enrichment claim where the defendant had been an officer of the corporation with which the plaintiff had contracted. *See* 26 N.Y.2d 192 (1970). The facts of *Bradkin* are instructive here. There, the plaintiff had entered into a written contract with his employer whereby the plaintiff would receive a finder's fee in exchange for "finding" a "corporation[] which needed financing," as well as ten percent of net profits from subsequent financings. *Id.* at 194. The plaintiff successfully secured such a corporation, and received the first component of the finder's fee. *See id.* at 194–95. However, on the eve of a subsequent financing, the employer withdrew from the transaction and, instead, one of its officers privately financed the corporation, thus depriving the plaintiff of his ten percent fee. *See id.* In recognizing the plaintiff's unjust enrichment claim against the officer, the Court of Appeals reaffirmed the Statute of Frauds's requirement that "[a] contract to pay a finder's fee . . . be in writing." *Id* at 198. However, the Court further held that "although there was no agreement between them, express or implied, the defendant received a benefit from the plaintiff's services under *circumstances* which, in justice, preclude him from denying an obligation to pay for them." *Id.* at 197.

Here, the Complaint alleges that BlueCrest was aware of First Hill's agreement with Skinit, that First Hill introduced Proveho to BlueCrest, and that the ultimate transaction between BlueCrest and Proveho tracked the structure and terms

11

negotiated by First Hill – minus the success fee and costs owed to First Hill under the Skinit Engagement Agreement. With these facts, First Hill has sufficiently stated a claim for unjust enrichment under New York law.

BlueCrest argues that First Hill cannot proceed with an unjust enrichment claim because "[w]here the plaintiff is a party to a valid contract, an unjust enrichment claim arising out of that contract must be dismissed, particularly where the claim is brought against a party that is not subject to the contract." (Mem. at 16.) BlueCrest relies on a series of cases in which this Court dismissed claims for unjust enrichment where a valid and enforceable written contract governed the subject matter of the dispute. (*See id.* (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 202–03 (S.D.N.Y. 2011); *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09-cv-4664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010); *Law Debenture v. Maverick Tube Corp.*, No. 06-cv-14320 (RJS), 2008 WL 4615896, at *12–13 (S.D.N.Y. Oct. 15, 2008).) However, those cases are readily distinguishable from this one, since no valid contract governs the subject matter at issue here. Pursuant to the Skinit Engagement Agreement, First Hill's potential success fee was triggered by an asset sale involving Skinit and a purchaser, not a foreclosure sale of the type that ultimately occurred. Instead, as noted above, the more analogous case is *Bradkin*, in which the New York Court of Appeals recognized the viability of an unjust enrichment claim on similar facts.

Accordingly, although BlueCrest may have numerous defenses to the claims and may ultimately assert and prove contrary facts, its motion to dismiss First Hill's unjust enrichment claim must be denied.

4. Tortious Interference with Contract

First Hill next alleges that BlueCrest tortiously interfered with the Skinit Engagement Agreement. (*See* Compl. ¶¶ 114–24.) Specifically, First Hill asserts that BlueCrest, by "usurp[ing] the transaction with Proveho," "intentionally interfered with Skinit's and First Hill's ability to perform under the Skinit Engagement Agreement, rendering [its] performance impossible." (*Id.* ¶ 118.)

To state a claim of tortious interference with contractual relations, a plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Electric Co*, 50 Cal. 3d at 1126.

Such a claim lies "when there is a lack of sufficient justification or privilege for such interference." *Sade Shoe Co. v. Oschin & Snyder*, 162 Cal. App. 3d 1174, 1179 (Cal. Ct. App. 1984). California courts have recognized a financial interest privilege, as set forth in the Restatement (First) of Torts § 769, as follows:

> One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor
>
> (a) does not employ improper means, and
>
> (b) acts to protect his interest from being prejudiced by the relation.

12

Rest. (1st) of Torts; *see also Sade Shoe Co.*, 162 Cal. App. 3d at 1181.

"Because privilege is an affirmative defense which defendants have the burden of proving, and the issue of whether a defendant employed wrongful means or acted to harm the plaintiff often turns on the defendant's state of mind, the existence of the privilege cannot normally be satisfactorily determined on the basis of pleadings alone." *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-cv-2079 (GPC), 2013 WL 4027858, *7 (S.D. Cal. Aug. 5, 2013) (citation and internal quotation marks omitted); *see also Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 351 n.7, (Cal. Ct. App. 2005) ("It is a qualified privilege that turns on the defendant's state of mind, the circumstances of the case, and the defendant's immediate purpose when inducing a breach of contract." (citations and internal quotation marks omitted)). "The resolution of the [privilege] issue turns on the defendants' predominant purpose in inducing the breach of the contract." *Culcal Stylco, Inc. v. Vornado, Inc.*, 26 Cal. App. 3d 879, 883 (Cal. Ct. App. 1972). Dismissal on the pleadings is only appropriate where the complaint shows justification or privilege as a matter of law that is "privileged under all conceivable circumstances." *Id*. at 881–83; *see also Sade Shoe Co.*, 162 Cal. App. 3d at 1180 ("[J]ustification may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint.").

To be sure, BlueCrest, as a secured creditor, had a clear financial interest in the business of Skinit. However, whether BlueCrest employed wrongful means or acted to harm First Hill is not clear on the face of the Complaint, and thus, cannot be resolved on this stage of the proceedings. Accordingly, BlueCrest's motion to dismiss First Hill's tortious interference claim is denied.

### 5. Leave to Amend

On the last page of its opposition brief, First Hill requests leave to amend the Complaint should the Court dismiss any its claims. (*See* Opp. at 25.)

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Thus, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citation and internal quotation marks omitted). The futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b) (6)."). A plaintiff must therefore provide some indication of the substance of the contemplated amendment before a court could entertain the request. *See In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) ("In the absence of any identification of how a further amendment would improve upon the [c]omplaint, leave to amend must be denied as futile.").

Here, First Hill does not explain what its desired amendment to the Complaint would say or how the change would overcome a subsequent motion to dismiss. Moreover, First Hill was given a preview of BlueCrest's motion and arguments in its pre-motion letter and at the pre-motion conference, and yet made no request to amend its pleading at that time. "While pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06-cv-643 (GEL), 2008 WL 4962985, *2 (S.D.N.Y. Nov. 20, 2008) (citations and internal quotation marks omitted). Accordingly, as First Hill has offered no explanation or justification for its contemplated amendment, its request to amend the Complaint is denied.

### IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED with respect to First Hill's fraud/fraudulent inducement and conversion claims and DENIED with respect to First Hill's unjust enrichment and tortious interference claims. In order to set a discovery schedule, the parties shall jointly submit a proposed case management plan no later than October 8, 2014.

The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 22.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 30, 2014
New York, New York

\*   \*   \*

Plaintiff is represented by Evan K. Farber, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022.

Defendants are represented by George R. Hinckley, Jr. and Christoph C. Heisenberg, 880 Third Avenue, 13th Floor, New York, New York 10022.